UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIRECTV, INC., a California corporation,

    Plaintiff,

v.

JOHN GOMES JR.,

    Defendants.

No. 03cv12407 EFH

COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF TITLE 47 U.S.C. § 605, TITLE 17 U.S.C. §§ 1201-1205, TITLE 18 USC §§ 2510-2521 AND M.G.L. CH. 93A, § 2 AND § 11

MAGISTRATE JUDGE

Plaintiff DIRECTV, Inc., by and through its attorneys, alleges as follows:

## INTRODUCTION

1. Plaintiff DIRECTV, Inc. brings this action against John Gomes Jr. for unlawfully manufacturing, distributing, and/or selling devices intended to facilitate the illegal and unauthorized reception and decryption of DIRECTV's subscription and pay-per-view television programming.

2. Plaintiff DIRECTV, Inc. is the nation's leading direct broadcast satellite system, delivering approximately 225 channels of digital entertainment and informational programming to approximately 11.0 million homes and businesses equipped with specialized DIRECTV receiving equipment. DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its television programming.

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF – Page 1

3. At all relevant times, News Datacom Limited, NDS Americas, Inc. and NDS Limited ("NDS") developed the technology and equipment used by DIRECTV to encrypt its transmissions, including Access Cards which, upon activation by DIRECTV, permit subscribers to view DIRECTV's television programming in a decrypted – descrambled – format. The Access Card is a serialized card with a unique electronic identifying number and is provided to subscribers as a component of the digital satellite equipment. It is identical in size and shape to a credit card; however, each Access Card has an embedded microprocessor that controls the decryption process and other functions.

4. Defendant John Gomes Jr. has engaged and continues to engage in the unlawful manufacture, distribution and/or sale of illegal devices which are intended to permit viewing of DIRECTV's satellite television programming without authorization by or payment to DIRECTV.

5. Defendant's actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205; the Electronic Communications Privacy Act (" Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521; M.G.L. Ch. 93A, § 2 and § 11; and state common law. Plaintiff DIRECTV brings this action to restrain these illegal activities against it.

## PARTIES

6. Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the state of California.

7. Defendant John Gomes Jr. is a resident of Carver, Massachusetts

## JURISDICTION AND VENUE

8. This action arises under the Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205; the

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF – Page 2

Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521; and state law.

9. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a)-(b), 47 U.S.C. § 605(e)(3)(A), 17 U.S.C. § 1203(c) and 18 U.S.C. § 2520(a), and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Personal jurisdiction is proper because defendant is either a resident of Massachusetts or has established minimum contacts with Massachusetts.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)-1391(b)(2) as defendant resides in Massachusetts, and a substantial portion of the events giving rise to DIRECTV's claims arose in this District.

## FACTUAL BACKGROUND

12. Plaintiff DIRECTV, Inc. has invested billions of dollars to develop the United States' first high-power, direct broadcast satellite system. DIRECTV delivers hundreds of channels of digital entertainment and informational programming to homes and businesses in the United States equipped with specialized DIRECTV receiving equipment – a small satellite dish (typically 18 inches in size), an integrated receiver/decoder ("IRD") and an Access Card which is necessary to operate the IRD. DIRECTV's satellite television programming currently includes major cable networks, major studio movies, local broadcast stations in certain markets, and special event programming offered on a pay-per-view basis, and a variety of other sports and special interest programs and packages.

13. NDS is a developer and supplier of proprietary encryption and "smart card" technology. NDS researches, develops, manufactures and sells electronic identification,

signature, encryption and security products, devices and services. In particular, NDS provides subscriber management systems, technology and products – including Access Cards – that allow the scrambling and unscrambling of satellite transmissions.

14. At all relevant times, NDS supplied DIRECTV Access Cards that were programmed and serialized (*i.e.*, assigned unique electronic identifying numbers) by NDS. The cards were provided to consumers as an integrated component of the IRD. IRDs were manufactured by Hughes Network Systems, Thomson Consumer Electronics (under the RCA, GE and other brand names), Sony Corporation and other manufacturers authorized by DIRECTV.

15. Persons who have purchased DIRECTV receiving equipment can subscribe to various packages of DIRECTV programming, for which the subscriber pays a periodic fee, usually monthly. Additionally, a subscriber can order pay-per-view events and movies either by "impulse," using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

16. DIRECTV does not manufacture digital satellite system hardware. DIRECTV sells programming, which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming rights holders. DIRECTV contracts and pays for the right to distribute the programming to its subscribers, and holds license rights under the Copyright Act to exhibit the programming to its subscribers.

17. All programming distributed by DIRECTV is delivered to DIRECTV's broadcast centers in Los Angeles, California or Castle Rock, Colorado. At the broadcast centers, DIRECTV digitizes and compresses the programming. The resulting signal is encrypted – electronically scrambled – by DIRECTV to prevent unauthorized reception.

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF – Page 4

DIRECTV then transmits the signal to satellites located in stationary orbits approximately 22,300 miles above the Earth.

18. The satellites relay the encrypted signal back to Earth, where it can be received by DIRECTV's subscribers equipped with satellite dishes and IRDs. The small satellite dishes (typically 18 inches in size) can be mounted on a rooftop, windowsill or deck railing at the subscriber's home or business. The signal is received by the dish and transmitted by wire to the IRD. The IRD (a box approximately the size of a VCR player) acts like a computer, which processes the incoming signal using the credit card sized Access Card. The Access Card is loaded into the IRD through a slot in the front or back of the unit.

19. The Access Card is historically provided to DIRECTV subscribers as an integrated component of the IRD. After a subscriber installs the dish and IRD at his or her home or business, and purchases one or more programming packages from DIRECTV, DIRECTV electronically activates the subscriber's Access Card by downloading software over the satellite to the card enabling it to decrypt the programming ordered by the subscriber.

20. The Access Card acts as a reprogrammable microprocessor and uses "smart card" technology to (1) authorize the decryption of that DIRECTV programming specifically purchased by the subscriber, and (2) capture and transmit to DIRECTV the subscriber's impulse pay-per-view information (via a modem located within the subscriber's IRD).

21. The Access Card is a key component in DIRECTV's security and accounting systems, as more specifically described below:

(a) <u>Security System</u>: To prevent unauthorized signal reception and program viewing, DIRECTV's transmissions of television programming are encrypted at DIRECTV's broadcast centers. The Access Card enables the subscriber's IRD to decrypt the signals and permit program viewing in accordance with the subscriber's authorized subscription package and pay-per-view purchases.

(b) <u>Accounting System</u>: The Access Card also records the subscriber's purchases of DIRECTV pay-per-view programming. Impulse pay-per-view purchases are recorded on the subscriber's Access Card and, at periodic intervals, the Access Card transmits this viewing history by initiating a telephone call (by means of a modem within the IRD) to DIRECTV's Conditional Access Management Center ("CAMC") in Castle Rock. From the CAMC, the information is forwarded to DIRECTV's billing system.

22. Plaintiff DIRECTV has significant interests, commercial and otherwise, in maintaining and securing the integrity of its programming, technology and products, including the Access Cards, and in prohibiting unauthorized reception and use of their protected communications.

## **DEFENDANTS' WRONGFUL CONDUCT**

23. Beginning at a time unknown and continuing to the present, Defendant John Gomes Jr. has engaged in repeated illegal and improper acts, practices and schemes:

(a) to assist, aid and abet the illegal and unauthorized reception and decryption of DIRECTV's satellite transmissions of television programming by persons not authorized to receive such programming;

(b) to defraud DIRECTV of subscription and pay-per-view revenues and other valuable consideration by manufacturing, distributing, and selling illegal devices

intended to facilitate the reception and decryption of DIRECTV's satellite television programming without authorization by or payment to DIRECTV;

(c) to defraud DIRECTV of revenues and other valuable consideration by manufacturing, distributing and selling illegal devices intended to illegally modify DIRECTV Access Cards;

(d) to misappropriate and convert to defendant's use trade secrets and confidential research, development and commercial information belonging to DIRECTV, and to infringe DIRECTV's proprietary interests therein, by copying, reproducing, cloning and modifying computer programs and other information developed by or on behalf of DIRECTV, without authorization by or payment to DIRECTV;

(e) to interfere with DIRECTV's contractual and prospective business relations by manufacturing, distributing and selling illegal satellite signal theft devices to existing and prospective DIRECTV subscribers; and

(f) to conceal defendant's fraudulent schemes and activities from and to hinder detection by DIRECTV and law enforcement officials.

24. On December 1, 2001, DIRECTV executed Writs of Seizure with the assistance of the United States Marshal Service upon The Computer Shanty. From this raid, DIRECTV obtained business records from Shanty, an Internet seller of Pirate Access Devices. Business records obtained from these sources reveal that the defendant in this action has made substantial purchases of illegal devices designed to assist in the unauthorized reception of DIRECTV satellite television programming.

25. Defendant has knowingly and willfully combined and conspired with others to defraud plaintiff DIRECTV of rights, properties and revenues belonging to it.

26. Defendant John Gomes Jr. committed and engaged in various acts in furtherance of his fraudulent schemes against plaintiff DIRECTV. Upon information and belief, those acts include, but are not limited, to the following:

(a) Defendant John Gomes Jr. purchased approximately 10 signal theft devices from Shanty. These purchases began on or about January 28, 2001, and continued until at least June 14, 2001. Defendant Gomes purchased these illegal signal theft devices and resold them in interstate commerce.

27. By distributing and selling illegal satellite signal theft devices, defendant has directly and intentionally facilitated the unauthorized reception and decryption of DIRECTV's satellite television programming by persons not authorized to receive it.

28. The Defendant, at all times pertinent hereto, and as alleged herein, was engaged in trade or commerce in the Commonwealth of Massachusetts:

(a) Through the selling and/or distributing of Pirate Access Devices to third parties; and/or

(b) Through the modification, assembly or manufacturing of Pirate Access Devices for the benefit of third parties.

29. As a result of the Defendant's sales, distributions, modifications, assembly and/or manufactured of Pirate Access Devices to or for the benefit of third parties DIRECTV has suffered actual money damages.

30. Defendant's wrongful conduct, as herein alleged, has caused and continues to cause significant and irreparable harm to DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

## FIRST CLAIM

### (FACILITATING UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS IN VIOLATION OF THE COMMUNICATIONS ACT, 47 U.S.C. § 605(a))

31. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

32. By designing, developing, manufacturing, assembling, modifying, importing, exporting, trafficking, distributing and/or selling illegal satellite signal theft devices and providing software, information and technical support services therefor, defendants have assisted the unauthorized reception and use of DIRECTV's satellite transmissions of television programming by persons not authorized to receive such transmissions, in violation of 47 U.S.C. § 605(a).

33. Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

34. Defendant has violated Section 605(a) of the Communications Act willfully and for purposes of direct or indirect commercial advantage or private financial gain.

35. Defendant knew or should have known that assisting third persons in the reception and use of DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 47 U.S.C. § 605(a).

## SECOND CLAIM

### (MANUFACTURE AND SALE OF SIGNAL THEFT DEVICES IN VIOLATION OF THE COMMUNICATIONS ACT, 47 U.S.C. § 605(e)(4))

36. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

37. Defendant has engaged in the business of manufacturing, assembling, modifying, importing, exporting, distributing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption of DIRECTV's satellite transmissions of television programming, or are intended by defendant to assist other persons in the unauthorized reception and use of DIRECTV's satellite transmissions of television programming, in violation of 47 U.S.C. § 605(e)(4).

38. Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.